Judge Tucker,
after stating the case, said, the first question which I shall consider is, whether a purchaser,for a valuable consideration of lands, for which the seller has an absolute conveyance in fee-simple duly proved and recorded, and the consideration for such a conveyance also acknowledged to have been fully received, can be affected by any latent equity which the first seller may hare *120 against the second, or by. any condition touching the original sale, from the first seller to the second, which is not expressed in the deed itself ?
This question seems to be fully answered by the President of this Court in the case of Wilcox v. Calloway,(a) where, in delivering the opinion of the Court, he says, “ The rule caveat emptor applies only to purchasers of defective legal titles. A purchaser of the legal title is not “ to be affected by any latent equity, whether founded on “ trust, fraud, or otherwise, of which he has not actual no- “ tice, or which does not appear in some deed necessary “ in the deduction of the title, so as to amount to construc- “ tive notice.”
Duval then could not be affected by any latent equity, or secret condition, between Bibb and Graves, which is not expressed in the deed itself. The mortgage of the 11th of February, 1790, therefore stands unimpeached, both at law and in equity, since he had neither actual notice of Bibb's private agreement, nor is there any thing iñ Bibb's deed to Graves, that could have led him tofurther inquiry. On the contrary, the information to be collected from it was conclusive, in favour of a purchaser j otherwise, the laws which direct the recording of all deeds of lands must prove a snare, instead of a security to purchasers.
The deed of February 11th, 1790, is to all intents and purposes an absolute conveyance in fee-simple, at law. The proviso is in the nature of a condition subsequent. The object of the deed is the perpetual security and indemnity of Duval, against a recovery which might be had against him by Currie or his heirs. Equity cannot deprive him Of that security ; and, so long as he may by possibility be exposed to the danger of a recovery, his estate at law remains absolute. Any future conveyance from Graves to him could only operate by way of a release of his equity of redemption ; for Graves had nothing else left in himself. If, upon the faith of such a release, he advanced money to Graves, or became security for him in any of his pecuniary transactions, his legal right would at *121 tacli thereto an equitable priority against any other equitable claim, especially if his engagements, as security for Graves, were actually prior to actual notice of such latent claims. If a third mortgagee can, by purchasing the first mortgage, attach a priority to his own over the second, by thus acquiring the prior legal title, and the union of his own mortgage with it, will not the same reason apply more forcibly in DuvaPs favour ? He therefore had a right to a perfect indemnity, not only from the events intended to he provided against in the mortgage of February 11, 1790, but from all other damages which be may have incurred, or still be exposed to, from his suretyships for Graves ; nor could a Court of Equity deprive him of either. Why then, might he not commute a contract for future indemnity, into one for present indemnity, by taking a release of Graves’s equity of redemption of the lands, the legal title of which was already vested in himself ?
According to the decision of this Court in Eppes v. Randolph,(a) Duval, as a purchaser for a valuable constderation, is at liberty to aver and prove the real consideration paid or agreed on, between himself and Tounghusband on the one part, and Graves on the other, for the lands, as conveyed by the deed of November 28, 1793. He states that they had become bound as securities for Graves to William Alexander & Co. The amount of that suretyship, and the time when it was undertaken by them, are therefore, it may be presumed, susceptible of proof. Nor must the security intended by the mortgage in February, 1790, be lost sight of, if it can be proved that it entered into the view of the parties, when contracting for the absolute sale of the lands: DuvaPs equity must, therefore, prevail over Bibb’s, as far as these matters extend. But, for any actual payments made by Duval to Graves, posterior to the information which the former received from Bibb at the house of Johnson, (if any such were made,) I think Bibb is fairly entitled to recover the amount thereof, with interest, towards the satisfaction of his claim against *122 Graves for any part of the purchas .--money of the land which may still remain due to him from Graves, but nothing more.
I am, therefore, of opinion, that the Chancellor’s decree be reversed, and the cause remanded for an account to be taken of any actual payments which may-have been made by Duval to Graves, subsequent to the notice received at Johnson's house, &c. That an account of the balance due from Graves to Bibb, upon his bonds of the 13th of December, 1788, for 200/. and for the three negroes, if any, upon a full settlement of all accounts between those parties, (except as to the Kentucky lands, for which Bibb appears to have taken an assignment of the Waltons' bonds, without any agreement on the part of Graves to be responsible, in case the lands were lost,) ought to be taken ; and for that purpose the personal representatives of Graves ought to he made parties to the suit; that Duval be considered liable for any actual balance due from him to Graves, as also for any actual payments made by him to Graves since the time of Duval's receiving notice of Bibb's equity, as before mentioned j and that the cause be sent back with directions accordingly-
Judges Roane and Fleming
agreed that the deci-ee be reversed; and the following was entered as the unanimous opinion of the Court: “ The Court having maturely con- “ sidered, &c. is of opinion that the said decree is erro- “ neous in this ; that the appellant, William Duval, having obtained from Francis Graves, before he had notice of ££ any equitable claim which the appellee, Robert Fleming' £( Bibb, might have on the lands sold by him to the said “ Graves, a conveyance in fee-simple, by way of mortgage, “ as a security against certain contingent damages to which “ the said appellant might be exposed from a claim-of “ James Currie to the houses and lots, before that time t£ sold and conveyed by the said Graves to the said appelst lant, and having, as he hath alleged in his answer, like- *123 i* wise become bound, together with a certain Isaac Young-41 husband as a security to William Alexander & Co• “ for a considerable sum of money, before notice as “ before mentioned, was well authorized to purchase the 44 release oí the equity of redemption of the said mortgage, 44 notwithstanding such notice afterwards received ; and 44 to avail himself of the consideration in his favour arising 44 out of die preceding circumstances, being responsible “ Only for so much of the purchase-money as he may either “ have actually paid to the said Graves, or have agreed to 44 pay to him, over and above the before-mentioned consi44 derations of indemnity ; therefore, it is decreed and or~ 44 dered, that the said decree be reversed and annulled, and 44 that the appellee pay to the appellant Ms costs by hiinex44 pended in the prosecution of his appeal aforesaid here. 44 And this Court proceeding to make such decree as the 44 said Superior Court of Chancery ought to have rendcr44 ed, it is further decreed and ordered, that an account be 44 taken before one of the Master Commissioners of the 44 said Court, of all sums of money, if any, actually paid 44 to the said Graves by the said appellant, since the notice “ proved to have been given him at the house of Thomas 44 Johnson, in the county of Louisa, or which may be still 44 due from him to the said Graves, or to his representa44 tives, as a further consideration for the purchase of the 44 release of the equity of redemption, beyond the indem44 nities before mentioned, and also an account of the pur44 chasc-money due from the said Graves to the appellee, ex- “ elusive of the Kentucky lands, for which this Court is of 44 opinion the said Duval was not responsible ; and, for the 44 purpose of taking such las!-mentioned account, the re-44 presentatives of the said Graves are to be made parties “ to this suit, and that the account so to be taken be re-44 ported to the said Superior Court of Chancery ; and if, 44 upon such report, there shall appear any money due from 44 the said Graves to the appellee, on account of the pur44 chase aforesaid, the appellant, Duval, ought to be, and *124 “ is hereby made responsible for so much thereof as it may* “ appear that he hath paid, or agreed to pay to the said “ Graves, since the notice before mentioned, with interest “ on the same, and no more ; and, on payment thereof by “ the appellant to the said appellee, Robert F. Bibb, that “ he, by a good and sufficient deed, at the costs and “ charges of the said appellant, release unto him all his right “ and title both in law and equity to the said land and pre- “ mises', and deliver quiet and peaceable possession thereof “ to the said appellant; and if the said appellant shall fail <e to pay to the said appellee whatever sum of money may “ appear to be due on such report of the Commissioner, “ with interest as aforesaid, within a certain time to be li- “ mited by the said Superior Court of Chancery, that then w the said Louisa land, or so much thereof as will be suf- “ ficient, be sold by Commissioners to be appointed by the a said Court for that purpose, at public auction, for ready “ money, after the time and place of sale shall have been “ noticed for four weeks successively in two of the Rich- “ mond newspapers; and, out of the money arising from the sale, the said Commissioners pay to the said appellee, “ or to his assigns, whatever sum of money shall, by the “ report of the Commissioner of the said Court, appear to “ be due, with interest as aforesaid, and the residue of the “ product of the sale, if any, after deducting the consequent “ expenses thereof, pay to the said appellant, and report “ their proceedings in execution of the same to the said “ Superior Court of Chancery, in order to a final decree.’*
Cause remanded to the Court of Chancery for further proceedings, according to the principles of this decree.-

 l Wash.41.

 2 Call, 185.